Manojkumar D. Patel, Petitioner *v.* Sauquoit Fibers Company and Pennsylvania Manufacturers' Association Insurance Co., Respondents.

Argued December 8, 1980, before Judges Wilkinson, Jr., Craig and Palladino, sitting as a panel of three.

*Manojkumar D. Patel,* petitioner, for himself.

*Kathleen A. Lenahan,* with her, *John R. Lenahan, Lenahan* and *Dempsey,* for respondents.

Opinion by Judge Craig, January 23, 1981:

In this workmen's compensation appeal, the claimant[1] questions a denial of benefits by the board,[2] affirming a referee's decision denying benefits to claimant, a quality control auditor.

On October 12, 1975, claimant suffered a work-related injury to his ankle, and from March 23, 1976 through July 18, 1976 received workmen's compensation at the rate of $88.90 per week. Claimant returned to his job on July 19, 1976, at his previous rate of pay, and on October 20, 1976 he signed a final settlement receipt.

Claimant, along with 150 fellow workers, was permanently laid off on October 22, 1976. Thereafter, claimant received unemployment compensation until October 22, 1977.

However, on July 16, 1977, the claimant filed a claim petition alleging a 25% permanent disability

---

[1] Manojkumar D. Patel.

[2] Workmen's Compensation Appeal Board.

emanating from his work-related injury suffered on October 12, 1975. Because the claimant had signed a final receipt, the referee properly treated the claim petition as a petition to set aside a final receipt.

A party wishing to set aside a final receipt has the burden of showing that all disability due to the injury in fact had not terminated at the time the final receipt was given. *R. H. Johnson Construction Co. v. Workmen's Compensation Appeal Board,* 35 Pa. Commonwealth Ct. 338, 385 A.2d 1035 (1978).

Based upon the record before us, we cannot hold that the referee capriciously disregarded competent evidence in reaching his decision that the claimant failed to sustain his burden of proof.[3]

The legal conclusion of disability rests upon a finding of loss of earning power. *Carpentertown Coal and Coke Co. v. Workmen's Compensation Appeal Board,* 52 Pa. Commonwealth Ct. 134, 415 A.2d 450 (1980). Here claimant's medical expert, Dr. Carl Steindel, testified that claimant was 10 to 15% disabled due to tuberculosis in his right foot. But Dr. Steindel was admittedly unaware of claimant's job duties, and therefore unable to state whether the claimant could perform his former job.[4] Hence Dr. Steindel's testimony concerned only the amount of physiological impairment suffered by the claimant and was not itself competent to establish disability.

Both claimant and Dr. Steindel testified that the claimant was capable of performing sedentary jobs.

---

[3] Our scope of review here, where the decision of the fact-finder is adverse to the person having the burden of proof, is limited to determining whether there has been a capricious disregard of competent evidence. *Cole Steel Equipment Corp. v. Workmen's Compensation Appeal Board,* 14 Pa. Commonwealth Ct. 454, 322 A.2d 743 (1974).

[4] Dr. Steindel testified in pertinent part as follows:

Q. Did you have occasion to see him or evaluate his condition on March 22, of this year, 1977?

This evidence provides substantial support for the referee's conclusion that no work-related disability prevented claimant from performing his normal type of work, a conclusion further buttressed by the finding that the claimant is licensed to practice law in the State of New York, having an office for that purpose in New Yory City.

Accordingly, we affirm the decision of the board.

ORDER

AND Now, January 23, 1981, the order of the Workmen's Compensation Appeal Board, Docket No. A-75303 dated April 5, 1979, is affirmed, and claimant's appeal is dismissed.

---

A. On March 22, 1977 I did see him. I had seen him in the interval between July 1976 and March 1977. In fact, I saw him on September 1, 1976, December 22, 1976 and then, the final time was March 22, 1977. At that point, my notation reads that Mr. Patel is doing very well. . . . It was my opinion that he did have some residual disability and I estimated it at 10 to 15% regarding his right foot and I felt this would be permanent.

. . . . .

Q. Now, July 19, 1976, four days before you seen him then, he had returned to work.

A. Yes.

Q. And he was working then. He worked from July 19, 1976 to October 22, 1976.

A. Yes.

Q. Now, if he was able to perform his work at that time, could he not continue to do that kind of work?

A. I would assume that he could. I don't know what kind of work that he did. I don't have any notes about when he returned to work.

Q. So, are you able to state then with any reasonable medical certainty whether or not he's able to go back and perform his normal and regular job?

A. I really don't know. If he was able to do it before, I assume he could do it now. I don't mean before the infection, I mean before today, since we treated him.